No. 9132.

CIVIL SERVICE COMMISSION OF DENVER *v.* CASEY.

1. DENVER—*Charter Construed—Civil Service.* The chief inspector in the License Department previous to the adoption of the Speer Amendment to the Charter, was an inspector, though drawing a higher salary than the other inspectors.

Having taken the civil service examination, with the others, and standing highest in the list, he was entitled to be retained in case of any reduction of the force. The one last in time of appointment, service, and certification, should be dropped.

2. *Payment of Salary to Officer Retained,* effect upon one wrongfully excluded. The fact that each of five inspectors were paid the salary prescribed for the office, is not a bar to the action of one unlawfully excluded, for his salary.

3. *Abolition of Municipal Office—Effect.* One unlawfully excluded from a municipal office is not entitled to be re-instated, after, by amendment of the charter, the office is abolished.

4. PARTIES—*Effect, of Amendment to the Charter,* pending the action *of an officer unlawfully excluded from his office.* The court having gained full jurisdiction of the controversy before any change in the charter, the abolition of the office does not work a discontinuance of the officer's action for the salary to which he was entitled.

The salary being an exact amount fixed by ordinance, mandamus lies to compel its payment.

*Error to Denver District Court, Hon. George W. Allen, Judge.* ·

Mr. JAMES A. MARSH, Mr. JACOB J. LIEBERMAN, for plaintiffs in error.

Mr. FRANK MCLAUGHLIN, Mr. JOSHUA F. GROZIER, for defendant in error.

Garrigues, C. J.

JUNE 1, 1912, City Auditor Markey appointed Thomas Casey chief license inspector for the City and County of Denver. He had theretofore been employed as a license inspector since 1908. There were in all seven inspectors, including Casey. After his appointment, he and the other

six in this department, while they were not obliged to do so, took the city civil service examination May 7, 1914, and he passed with a grade of 91.8 per cent, being the highest, and May 15th was placed on the eligible list. The grades of the seven inspectors taking this examination were as follows:  91.8, 81.6, 87, 86.2, 85, 80.2, 78.4 per cent. Sometime in 1915 two of them were dropped, and in April Wilbur F. Cannon and one Delaney were appointed in their stead, but Delaney failed to pass, and his name was dropped, and the place was not afterward filled, leaving six inspectors.  December 14, 1915, Auditor Markey notified Casey in writing that, on account of the adoption of the prohibition amendment, the falling off of the revenue of the city, and the decrease in the amount allowed the Auditor's office for 1916, he had obolished the office of chief license inspector from and after December 31, 1915; that his work had been satisfactory, and that it was on account of economy that his name was dropped.  December 27, 1915, the Auditor notified the city Civil Service Commission that necessity for economy in the Auditor's office had caused him to abolish the office of chief license inspector, and to drop Casey's name from the payroll after December 31, 1915.  January 4, 1916, the commission notified the Auditor that it approved dropping Casey's name from the payroll.

No other inspector was discharged, let out or dropped from the payroll except Casey.  The five who remained after Casey was dropped continued on the payroll, each drawing the salary of $100.00 per month, as inspector, from January 1st to May 17, 1916.  May 9, 1916, there was a charter election, and May 17th the Speer amendment took effect, doing away altogether with the license inspection department. Casey drew no salary from January 1st to May 17, 1916. There was $5,000 remaining in the city treasury in this department May 17, 1916.  The distinction between the chief and the other inspectors, was the salary.  Casey, as chief, drew $150.00 per month, and the others $100.00 each per month.  After he was notified by the Auditor that his name would be dropped from the payroll as chief in-

spector, he asked to remain as inspector, and offered to do an inspector's work at the salary of $100.00 per month. This was refused, and he was let out or dropped from the payroll after January 1, 1916.

February 23, 1916, he filed suit in mandamus, asking to be reinstated as an employee in the license inspection department, and to require that his name be certified upon the payroll, and to have issued to him warrants or vouchers for his salary, and that the same be paid. After the amendment to the city charter took effect, May 17, 1916, his petition and the alternative writ were amended, making certain officers under the new charter parties defendant, in addition to the city officers under the old charter when he began the suit. Issues were joined and trial was had to the court November 28, 1916, which ordered that the alternative writ be made peremptory, and commanding the payment of $456.65 to Casey, being the salary of an inspector from January 1st, to May 17, 1916, at $100.00 per month.

Section 204 of the city charter provided: "All persons at the time of the adoption of this charter, occupying positions affected by the provisions of this article, shall retain their positions until discharged, under the provisions hereof."

Section 201 provided: "When the force in any department is reduced, the person last certified to such department for employment shall be the first laid off, and when the force in such department is increased, the persons suspended shall be reinstated in the order of their original certification."

Rule 8 of the civil service commission provided: "Whenever, for lack of work or lack of funds or other necessary cause, it becomes necessary to reduce the force in any employment within the classified service, the person last certified for employment shall be laid off first."

Garrigues, C. J., after stating the case as above, delivered the opinion of the court:

1. Casey stood highest in the examination, was the oldest in point of service, and certification, and when it became necessary to reduce the force, he should have been retained at the head of the list of inspectors, and the one last in time of appointment, service and certification should have been dropped.

From January 1st to May 17, 1916, the five inspectors retained were each paid an inspector's salary. When the position of chief inspector was abolished, Casey asked to be retained as an inspector, and offered to work at an inspector's salary, which was refused, and he was laid off and his name stricken from the payroll. While, as chief inspector, he drew $150.00 a month, and the other inspectors only $100.00 a month, still he was an inspector.

2. It is argued that the salary which should have been paid Casey, as an inspector, was paid to another who in fact performed the services; that is, the five retained inspectors, after Casey was dropped, were all paid an inspector's salary from January 1st to May 17, 1916. Therefore, if Cannon should have been dropped from the payroll, but was not, and performed the services and drew the salary of an inspector, then Casey's salary was paid to Cannon. Or, if Casey should have been at the head of the list, but was dropped, then the one who in fact stood at the head of the last, was paid Casey's salary; so, no matter what position in the line Casey should have occupied, as long as he did not in fact fill the position, but was dropped, and it was filled by another, who did the work, and drew the salary, it would be against public policy to compel the city to pay it twice under the doctrine announced in *Thompson v. Denver*, 61 Colo. 470, 158 Pac. 309, Ann. Cas. 1918 B, 915.

This argument, upon its face, seems quite plausible, but it is not logical. Cannon was not paid Casey's salary; he was permitted to remain in his position and to draw his own salary as an inspector, when he should have been the first one dropped and his salary turned into the general fund. No inspector drew Casey's salary, they all remained

in the position of an inspector, and drew their respective salaries. Casey's salary as chief after he was dropped was transferred to the general fund, and kept by the city, and the five other inspectors were permitted to remain and draw their own salaries, not Casey's.

3. The change in the city charter from a commission to a mayor form of government went into effect May 17, 1916, by which the license inspection department was abolished. Therefore, it was impossible after that for the court to reinstate Casey as an inspector because there was no such position. The case was tried in November, 1916, and it is argued that the action should have been dismissed because it was impossible at that time for Casey to be reinstated.

Mandamus is the proper remedy to require the certification of payrolls and warrants for salary to which an employee is entitled, and to compel the payment thereof.

*City of Denver v. Bottom,* 44 Colo. 308, 98 Pac. 13.

The parties were properly before the court before the new charter was adopted, and it would have been idle ceremony to dismiss for the purpose of bringing another action for the salary in which the issues would have been the same, and in which the city could have had no defense other or different from that in the original proceeding. The court having acquired full jurisdiction before the charter was changed, the change would not, under the facts in this case, operate to dismiss the action. The salary was fixed by ordinance; the right to recover was for an exact amount; the claim, therefore, was liquidated, and we think the proceeding a proper remedy in such a case to compel its payment.

*Affirmed.*

Decision *en banc.*

Mr. Justice Teller and Mr. Justice Burke dissent.

Mr. Justice Allen not participating.

Decided April 7, A. D. 1919. Rehearing denied June 11th, A. D. 1919.